NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| RONALD JONES, | : | |
| Plaintiff, | : | Civ. No. 02-3045 (GEB)(TJB) |
| v. | : | |
| | : | **MEMORANDUM OPINION** |
| M. BROWN, S. SOOTKOOS and ROY L. HENDRICKS | : | |
| Defendants. | : | |

This matter comes before the Court upon plaintiff Ronald Jones' ("Plaintiff") Motion for Enforcement of Injunctive Relief Order and Appropriate Sanctions [Docket No. 53]. The Court, having considered the parties' submissions and having decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78, and for the reasons discussed below, will deny Plaintiff's motion.

**I.    BACKGROUND**

**A.    Facts**

On September 25, 2002, plaintiff Ronald Jones, an inmate at Northern State Prison ("NSP"), filed a Complaint pursuant to 42 U.S.C. § 1983 raising legal access, free speech, retaliation, and property deprivation claims. Plaintiff alleged that various prison officials ("Defendants") have violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Compl. ¶¶ 17, 24, 26, 27, 29, 40, New Jersey Dept. of Corrections Admin. Remedy Forms ("Remedy Form") attached as Exhs. C, D and E thereto.

Specifically, Plaintiff alleged that his First Amendment rights to legal access and free speech were being violated by a revision in the Department of Corrections ("DOC") policies concerning incoming prisoner mail (the "New Policy"). Compl. ¶¶ 21, 23-24. Prior to the revision, DOC regulations prohibited officers from opening a prisoner's legal mail outside of his presence. Affidavit of Devon Brown ("Brown Aff."), ¶ 4 [Docket No. 37]; *see also* N.J.A.C. § 10A:18-3.4 (1997), *amended by* N.J.A.C. § 10A:18-3.4(b) (2001); 33 N.J.R. 4033(a). Under the New Policy, enacted on October 19, 2001, DOC officers may open prisoners' legal mail out of the prisoners' presence and the inspectors may shake the contents loose "to ensure that no contraband is included." N.J.A.C. § 10A:18-3.4(b); attached as Exh. B to Brown Aff.[1]

Plaintiff claimed that the New Policy, as enacted and implemented, violated the First Amendment because, since its enactment, prison officials have been routinely reading, censoring, and copying prisoner legal mail in retaliation for bringing or contemplating lawsuits against NSP officers. Compl., ¶¶ 23-29. He further claimed that the New Policy delays his legal mail by ten to fourteen days and prejudiced his ability to respond to various legal matters, including his petition for clemency and federal actions. *Id*. at ¶¶ 26, 31, 33-36. Plaintiff also

---

[1]DOC enacted the New Policy pursuant to an Executive Order issued on September 11, 2001, which declared a statewide State of Emergency and authorized state agencies to "waive, suspend or modify any existing rule the enforcement of which would be detrimental to the public welfare during this emergency, notwithstanding . . . any law to the contrary." Exec. Order 131-2001, attached as Exh. A to Brown Aff.  DOC reasoned that the New Policy was warranted as a response to the anthrax scare which emerged in September and November 2001 and during which time at least four letters containing anthrax were processed in the Hamilton, New Jersey mail processing center, at least five people were killed and thirteen others sickened from anthrax exposure.  Brown Aff., ¶ 4; *see also* David Kocieniewski, *Hamilton: Anthrax Cleanup to Last Until 2004*, N.Y. TIMES, August 8, 2003, at B5.

made further claims of retaliation by prison officials, including that an NSP guard verbally threatened him in retaliation for filing Remedy Forms and that an internal affairs officer ordered prison guards to search his cell and confiscate his typewriter and hundreds of legal documents. *Id.* at ¶¶ 44-46.  For these allegations, Plaintiff sought injunctive and declaratory relief as well as compensatory and punitive damages.  *Id*. at 3-4.

    B.    **Procedural History**

On March 21, 2003, Plaintiff file a motion leave to file an Amended Complaint, in which he named thirteen additional defendants and added more allegations of threatening, harassing, and retaliatory behavior, as well as additional legal access and other claims.  [Docket No. 21]. On May 1, 2003, the Magistrate Judge John J. Hughes denied Plaintiff's motion for leave to amend and on May 28, 2003, Plaintiff appealed. [Docket Nos. 29, 35].  Further, on June 2, 2003, Defendants moved for summary judgment, seeking to dismiss all of Plaintiff's claims. [Docket No. 36].  On August 22, 2003, this Court issued a Memorandum Opinion and Order: (1) affirming Magistrate Judge Hughes' order denying Plaintiff's motion to amend the Complaint; (2) denying Plaintiff's appeal of Magistrate Judge Hughes' order; (3) granting Plaintiff's motion for summary judgment; and (4) closing the case. [Docket Nos. 43, 44].  On September 15, 2003, Plaintiff appealed this Court's decision to the United States Court of Appeals for the Third Circuit ("Third Circuit"). [Docket No. 45].  On September 15, 2006, the Third Circuit issued its opinion affirming this Court's judgment in all respects except its grant of summary judgment on Plaintiff's claim for injunctive relief, which it reversed and remanded with instructions to enter such an injunction.  *Jones v. Brown*, 461 F.3d 353, 365 (3d Cir. 2006).  On September 20, 2007, the Court issued an order consistent with the Third Circuit's ruling (the "Order"). [Docket No.

49].

Plaintiff filed the instant motion on December 3, 2008 ("Motion"). [Docket No. 53]. After requesting an extension of the return date for the Motion until January 20, 2009, which was granted by this Court on December 22, 2008 [Docket No. 54], Defendants filed their opposition on January 1, 2009 ("Defendants' Opposition").[2] On March 20, 2009, Plaintiff filed what he termed a "Motion for Declaratory Summary Judgement [*sic*] Against Adversary Party(s) for Contempt of Court." [Docket No. 57]. Although Plaintiff has designated this filing as a motion, a review of its content reveals that it is actually Plaintiff's reply brief in support of the Motion. As such, the Court will construe it as a reply in support of the Motion and Plaintiff's "Motion for Declaratory Summary Judgement [*sic*] Against Adversary Party(s) for Contempt of Court" [Docket No. 57] shall be administratively terminated.[3] Defendants filed a response to Plaintiff's Reply ("Defendants' Sur-reply") on April 3, 2009, to which Plaintiff responded on April 27, 2009 ("Plaintiff's Sur-reply"). [Docket Nos. 58 and 59, respectively].

    **C.**    **The Parties' Arguments**

        **1.**    **Plaintiff's Allegations Regarding Legal Mail**

---

  [2] The docket reveals that the copy of this Court's order granting an extension of the return date to January 20, 2009 that was sent to Plaintiff was returned to the Clerk of this Court as undelivered. [Docket No. 56]. However, according to Plaintiff's subsequent submission in which he references this filing, it is clear that Plaintiff ultimately did receive a copy of this order. *See e.g.* Pl.'s Rep., ¶ 26 [Docket No. 57].

  [3] In so doing, the Court recognizes that it is a "well-established principle that a pro se prisoner's pleadings should be held to less stringent standards of specificity and their complaints construed liberally." *Lewis v. Attorney General of United States.*, 878 F.2d 714, 722 (3d Cir. 1989) (citations omitted). However, a court need not "credit a pro se litigant's bald assertions or legal conclusions." *Day v. Fed. Bureau of Prisons*, 233 Fed. Appx. 132 (3d Cir. 2007) (internal quotations and citations omitted).

a.      **Plaintiff's Initial Allegations**

In the Motion, Plaintiff alleges that Defendants are not complying with the Order. (Motion, ¶¶ 10-11).  Specifically, Plaintiff claims that, in September and October 2001, prison officials distributed legal mail in the "Traffic Control" area of NSP.  *Id.* at ¶ 14.  Plaintiff avers that there was a 4 x 8 inch hole in one of the walls of the room where the legal mail was opened through which prisoners were expected to look while their mail was opened.  *Id.*  Plaintiff asserts that he was unable to see his legal mail being opened through that hole, and that he informed corrections officers of this fact both verbally and through the submission of a Remedy Form dated November 19, 2007 and a letter to DOC Commissioner George W. Hayman ("Hayman") dated December 28, 2007.  *Id.* at  ¶¶ 14-15; Remedy Form and Pl.'s Letter to Hayman, attached as Appendix A to Motion at 2-3 and 4, respectively.  Plaintiff states that in early 2008, Plaintiff received correspondence from DOC Acting Deputy Commissioner James Barbo ("Barbo") and NSP Adminsitrator Bruce A. Hauck ("Hauck"), stating that the matter would be investigated. Barbo's Letter to Plaintiff, Memo for Captain Campos ("Campos") to Hauck, attached as Appendix A to Motion at 5, 6, respectively.

Plaintiff claims that on or about January 30, 2008, he noticed that a 1 x 2 foot window had been placed in one of the walls of the "Traffic Control" area mail room.  Motion, ¶ 19; *see also* Pl.'s Letter to Hauck dated Mar. 21, 2008, Appendix A at 7.  Plaintiff states that this window was usually covered with black plastic, which was taken down during the "legal mail processing period" so that prisoners could witness the opening of their legal mail.  Motion, ¶ 19. Plaintiff states that he felt that this arrangement "met the requirements of the federal legal mail injunction" imposed by the Order and that "frankly, the Plaintiff was satisfied with this

5

modification." *Id.*

However, Plaintiff states that only twice, in February 2008, did the corrections officers remove the black plastic cover from the window while opening his legal mail. *Id.* at ¶ 20. Plaintiff claims, other than those two instances, the corrections officers never uncovered the window so that he could witness them opening his legal mail. *Id.* Plaintiff states that he reminded the corrections officers to remove the plastic from the window before opening his legal mail on several occasions, but that they refused to do so. *Id.* Plaintiff also states that he sent a letter to Hauck to report this problem but that he never received a response. *Id.* at ¶ 21 (citing Pl.'s Letter to Hauck dated Mar. 21, 2008, attached as Appendix A to Motion at 7).

In connection with these alleged infractions, Plaintiff seeks (1) enforcement of the Order; and (2) the imposition of $10,000 in sanctions against Defendants and other prison officials, including Administrator Larry Glover, for failure to comply with the Order. Motion, ¶ 45(a)(d); Pl.'s Rep., ¶ 45.

### b. Defendants' Response Regarding NSP's Legal Mail Policy

Defendants dispute Plaintiff's assertions that they are violating the Order. In support of their contentions, Defendants submit the Declaration of Lieutenant William Anderson ("Anderson Decl."), who is currently employed as Administrative Lieutenant at NSP and who claims to have "personal knowledge of the NSP policies and procedures regarding the opening of NSP inmates' legal mail." Defs.' Opp. at 2 (citing Anderson Decl. [Docket No. 55]). Defendants agree with Plaintiff that, subsequent to the issuance of the Order, prisoners' legal mail was opened in a room located in the "Traffic Control" area of NSP, which they assert has

6

windows located on two of its walls through which prisoners could view the opening of their legal mail. Defs.' Opp. at 2 (citing Anderson Decl., ¶ 4). Defendants further concede that these windows are generally kept covered with black plastic to prevent prisoners from looking through them at times when their legal mail was not being opened. Defs.' Opp. at 2 (citing Anderson Decl., ¶ 4). However, Defendants contend that, "contrary to [Plaintiff's] allegations, at no time did the black plastic obstruct the view of inmates while their legal mail was being opened." Defs.' Opp. at 2 (citing Anderson Decl., ¶ 4).

Further, Defendants argue that Plaintiff's complaints regarding the obstruction of the windows on the room in the "Traffic Control" area are irrelevant because legal mail is no longer opened in that location. Defs.' Opp. at 3 (citing Anderson Decl., ¶ 4). Instead, Defendants claim that, at some unspecified time in the past, Defendants began opening prisoners' legal mail in a room in the NSP Social Services Department. Defs.' Opp. at 3 (citing Anderson Decl., ¶ 4). Defendants state that, instead of viewing corrections officers open their mail through a window, prisoners were actually brought into this room to observe the procedure. Defs.' Opp. at 3 (citing Anderson Decl., ¶ 4).

Defendants further assert that, at some unspecified time, the corrections officer who was assigned to open legal mail was relocated to a different area of the prison. Defs.' Opp. at 3 (citing Anderson Decl., ¶ 4). As a result, the location for the opening of prisoners' legal mail was again moved, this time to a room in the NSP Visiting Area. Defs.' Opp. at 3 (citing Anderson Decl., ¶ 5). Defendants state that, at this location, prisoners are also actually present in the room when their legal mail is opened. Defs.' Opp. at 3-4 (citing Anderson Decl., ¶ 5).

Defendants argue that in light of these facts, Plaintiff has not demonstrated that Defendants are failing to comply with the Order and therefore Plaintiff's Motion should be denied. Defs.' Opp. at 4.

### c. Plaintiff's Arguments Regarding Further Changes to NSP's Legal Mail Policy

In his Reply, Plaintiff concedes that prisoner legal mail is no longer opened in the "Traffic Control" area of NSP and that it is now opened in a room in the NSP visiting area. Pl.'s Rep., ¶¶ 15, 35. Plaintiff further admits that, in this new location, his legal mail is opened in his actual presence. *Id.* at ¶ 35. However, since this change occurred sometime between December 19 and December 26, 2008, Plaintiff alleges that Defendants nevertheless violated the September 20, 2007 Order for a significant period of time and should be held in contempt for doing so. *Id.* at ¶¶ 35-37, 40. Plaintiff further alleges that Lieutenant William Anderson ("Lt. Anderson") and Deputy Attorney General Chrisopher Josephson ("DAG Josephson") should also be held in contempt for making false statements in the Anderson Declaration and for suborning perjury, respectively. *Id.* at ¶¶ 40, 44. In support of these contentions, Plaintiff submitted the affidavits of three fellow inmates ("Plaintiff's Affidavits"), all of whom attest to the same timeline of events as set forth above. *Id.* at ¶ 39 (citing Affs. of Marco Vincent DiGiovanni, Harold Grant and Clarence Haley, attached as Appendix A of Pl.'s Rep. at 42, 43, and 44-46, respectively).

### d. Defendants' Response to Plaintiff's New Allegations

In response to Plaintiff's new allegations regarding the chronology of the changes made to NSP's legal mail policy, Defendants note that Plaintiff now admits that his legal mail is now being opened in his presence and argue that his Motion is therefore moot. Defs.'s Sur Rep. at 2.

8

Defendants further state that Plaintiff's allegations of perjury are based on nothing more "than his paranoid, delusional and otherwise baseless contention that his view of his legal mail being opened was obstructed by a piece of black plastic that was placed over the windows" of the "Traffic Control" area room used to open prisoners' legal mail. *Id.* at 2-3. Defendants also question the veracity of the Plaintiff's Affidavits, noting that they each contain identical language and arguing therefore that they should be given no weight because "they were obviously not based upon personal knowledge of the declarant[s], but rather, were concocted by [Plaintiff.]." *Id.* at 3. Finally, Defendants further dispute Plaintiff's contention that the mail opening area was relocated only after Plaintiff filed his Motion by submitting a supplemental declaration from Lt. Anderson ("Anderson Supplemental Declaration," and together, with the Anderson Declaration, the "Anderson Declarations") in which Lt. Anderson avers that the opening of legal mail was moved from the "Traffic Control" area to the NSP Social Services Department Area in November 2008 and was again moved to the NSP Social Services Department in December 2008. Anderson Supp. Decl. ¶ 4.

e.     **Plaintiff's Sur-Reply**

In his Sur Reply, Plaintiff disputes Defendants' allegations regarding the veracity of the Plaintiff's Affidavits, stating that despite the fact that he personally prepared each affidavit, he told each affiant to read the document before signing it and to make changes to it should he find anything in it to be inaccurate. Pl.'s Sur Rep., 2. With respect to Defendants assertion that Plaintiffs' claims of perjury are due to paranoia, Plaintiff asks the Court to take judicial notice of the fact that DAG Josephson is not a psychiatrist, psychologist or mental health expert and therefore is not qualified to make such an evaluation of Plaintiff's mental health. *Id.* at 3.

9

Finally, Plaintiff disputes the dates set forth in the Anderson Supplemental Declaration regarding when NSP officials changed the legal mail processing location. *Id.* at 5. Specifically, Plaintiff questions why these dates were not included in the initial Anderson Declaration and further states that he has submitted document requests to Defendants for the logbook entries for "Traffic Control" Area for November and December 2008 in order to determine whether they support Defendants contentions. *Id.* (citing Doc. Requests, Appendix A to Pl.'s Sur Rep.).

### 2. Plaintiff's Retaliation Claims

In addition to Plaintiff's claims regarding the enforcement of the Order, Plaintiff also makes several allegations that various corrections officers have retaliated against him for complaining about the prison's legal mail practices. Specifically, Plaintiff alleges that: (1) he is being denied meaningful access to the prison law library, and corrections officers and prison officials are harassing, punishing, threatening and retaliating against Plaintiff as a result of his filing of the instant action; (2) he was pat-searched on one occasion and his cell was searched on several occasions without reason, and during these cell searches, Plaintiff's typewriter and eyeglasses were damaged and his legal documents were put into disarray; and (3) Plaintiff's repeated requests to be transferred to a different unit in NSP, as well as his request to shower on December 15, 2008, were unduly denied. Motion, ¶¶ 12, 22, 13, 26; Pl.'s Rep., ¶¶ 12, 20-25, 27. Asserting that the aforesaid actions were retaliatory, Plaintiff claims that he suffered harm which included, *inter alia*, the need to handwrite his submissions to this Court as well as other courts and to prepare these filings without the benefit of legal reference materials and other tools available in the law library. Motion ¶¶ 34-35. Plaintiff also asserts that he was wrongfully denied parole and informs this Court that, in July of 2008, he was in the midst of appealing a

denial of his request for transfer to a prison located in Southern New Jersey. Motion ¶¶ 23-25, 29; Pl.'s Rep., ¶¶ 12 . Finally, Plaintiff alleges that although prison officials are required to leave a minimum of $15.00 in his inmate commissary account so that the he may purchase necessities, in August 2008 all of his funds were deducted from his account in order to pay for various legal fees. Motion, ¶ 30-33; Pl.'s Rep., ¶¶ 12.

With respect to these claims, Plaintiff seeks "declaratory judgement [*sic*] for enlargement of the [Order], further enjoining NSP officials . . . from summarily punishing and/or inflicting severe punishments [on] the Plaintiff without providing him with the minimal safeguards of procedure due process [*sic*]" as well as "prohibiting NSP officials, successors in interest and all other prison employees . . . from harassing, threatening, punishing or retaliating in anyway against the Plaintiff [for] filing prison grievances, for this motion, [for] having filed this suit, for any of his legal activities and so on." Motion, ¶ 45(b). Plaintiff also seeks a judgment awarding him $475.00 in "reasonable expenses for legal postage and legal copying . . . [and] for improper conduct by NSP officials" including their harassment of him and for causing him unnecessary financial hardship. *Id.* at ¶ 45(c). Plaintiff also seeks $6,500.00 "in reasonable cost[s], or in the alternative, that his present $3,500.00 in legal related debts for prison postage and legal copying cost[s] and litigation filing fees owed to the State be revoked 'as of course [*sic*] to the prevailing party under [Fed. R. Civ. P.] 54(D) and 28 U.S.C. [§] 2412(b)." *Id.* at ¶ 45(e).

II.   **DISCUSSION**

    A.   **Plaintiff's Civil Contempt Claims**

Plaintiff alleges that Defendants have failed to comply with the Order and that, as a result,

Defendants should be held in contempt of this Court. Motion, ¶¶ 39-44. As such, the Court will treat the Motion as a motion for civil contempt.

### 1.     Standard of Review

In order to find a party in civil contempt, the Court "must find that (1) a valid court order existed, (2) the [party] had knowledge of the order, and (3) the [party] disobeyed the order." *John T. ex rel. Paul T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) (quoting *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir.1995)). A finding of civil contempt must be supported by "clear and convincing" evidence. *Id*. Thus, "[a] contempt citation should not be granted if 'there is ground to doubt the wrongfulness of' the [party]'s conduct." *Harris*, 47 F.3d at 1326 (citation omitted). Similarly, the "resolution of ambiguities ought to favor the party charged with contempt." *Id.* However, "[t]he validity of the underlying order is not open to consideration." *Id.*

The Third Circuit has recognized that substantial compliance is a defense to civil contempt. *Harris*, 47 F.3d at 1324. ("a defendant may not be held in contempt as long as it took all reasonable steps to comply"). The burden is on the defendant to "introduce evidence beyond 'a mere assertion of inability,' and to show that it has made 'in good faith all reasonable efforts to comply.'" *Id.* (citations omitted). However, good faith alone is not a defense to civil contempt and willfulness is not a necessary element. *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994).

### 2.     Application

In the present case only the third prong of the civil contempt analysis is contested, i.e.

whether Defendants have disobeyed the Order.  Plaintiff concedes that as of late December 2008, his legal mail has been opened in his presence.  Pl.'s Rep., ¶¶ 35-37.  Accordingly, all parties agree that Defendants have been in compliance with the Order for at least the past five months.  However, the parties dispute whether Defendant violated the Order during the time from when the Court issued the Order was issued up and until late December 2008.  In support of his contention that Defendants were in violation, Plaintiff submits three affidavits of fellow prisoners in which they attest to certain periods of time in which legal mail was opened outside of their presence.  See Pl.'s Affs., attached as Appendix A to Pl.'s Rep. at 42, 43, and 44-46, respectively.  In response, Defendants submit the Anderson Declarations in which Lt. Anderson avers that at no time since the entry of the Order had NSP corrections officers violated it by opening prisoners' legal mail outside of their presence or view.  *See generally* Anderson Decl. and Anderson Supp. Decl.

      The Court finds that Plaintiff has failed to put forth clear and convincing evidence to support his contention that Defendants violated the Order.  Although Defendants have only submitted two declarations to dispute Plaintiff's contentions, and have not put forth any corroborating evidence such as NSP's written policy regarding the opening of legal mail or sections of logbooks indicating when and where legal mail was opened in the facility, the burden is on Plaintiff to show by clear and convincing evidence that Defendants have violated the Order.  *Harris*, 47 F.3d at 1326.  Even were the Court to find the affidavits submitted by both parties to be credible, any ambiguities regarding whether a violation has occurred should be resolved in

favor of the party charged with contempt. *Id.*[4] As such, Plaintiff's Motion, as it relates to his claims the Defendants failed to comply with the Order, is denied.

### B. Plaintiff's Remaining Allegations

Plaintiff's new retaliation allegations described above challenge events entirely different from the events asserted in the original Complaint (and adjudicated by this Court in the Order and the preceding rulings).[5] Consequently, these new retaliation claims are not before the Court in the instant action wherein Plaintiff seeks compliance with the Order and instead must be raised new and separate civil actions. As such, Plaintiff's new retaliation allegations are dismissed without prejudice.[6] Similarly, Plaintiff's challenges to his denial of parole must be brought in a separate action,[7] be it a civil right suit or a habeas matter.

---

[4] The Court notes that, like Plaintiff's Affidavits, the Anderson Declarations do not appear to have been prepared by Lt. Anderson, as is evidenced by the spaces left open for Lt. Anderson to insert certain facts and information. *See generally* Anderson Decls. Therefore, the Court finds Defendants' arguments regarding the Plaintiff's Affidavits' veracity unavailing.

[5] For the purposes of this Memorandum Opinion and accompanying Order, the Court uses the term "new retaliation allegations" as a collective, since Plaintiff's allegations appear to be based on a range of events that occurred after Plaintiff informed Defendants about Plaintiff's position that Defendants were not in compliance with this Court's Order: Plaintiff's allegations seem to set forth not just First Amendment retaliation-based challenges, but also other First Amendment challenges, as well as Fourth, Eighth and Fourteenth Amendment challenges.

[6] The Court further notes Plaintiff also reiterates the retaliation claims he set forth in his Complaint. However, these old allegations were already conclusively adjudicated, since this Court previously granted Defendants' motion for summary judgment on these claims, and the Third Circuit affirmed that ruling. Mem. Op. at 23 [Docket No. 14]; *Jones v. Brown*, 461 F.3d 353, 356 n.2 (3d Cir. 2006).

[7] It appears self-evident that Plaintiff's parole could not have been denied by his prison officials; rather, it was denied by a different entity, namely the state parole board, and during a transaction unrelated to Defendants' retaliatory actions. Rule 20(a)(2) of the Federal Rules of Civil Procedure limits the joinder of defendants, and Rule 18(a), governs the joinder of claims. *See* Fed. R. Civ. P. 18(a), 20(a)(2). Rule 20(a)(2) provides: "Persons . . . may be joined in one

Being mindful of the possibility that Plaintiff's new retaliation claims and/or his denial of parole claims might be sensitive to the bar ensuing from the applicable statute(s) of limitations, the Court wishes to preserve Plaintiff's ability to timely challenge the alleged wrongdoings. Therefore, the Court will direct the Clerk to open two new separate civil matters for Plaintiff and docket Plaintiff's Motion in each of these two matters and will deem the pleading in each of these actions submitted to the Court as of the date of Plaintiff's filing of the instant Motion. However, having no statement from Plaintiff as to whether Plaintiff wishes to initiate either one

---

action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A) and (B).  "Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil 3d* §1655; *see also United States v. Mississippi*, 380 U.S. 128, 143 (1965); *Ross v. Meagan*, 638 F. 2d 646, 650 n.5 (3d Cir. 1981), *overruled on other grounds by*, *Neitzke v. Williams*, 490 U.S. 319, 328 (1989).  Consequently, a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact.  *See* Fed. R. Civ. P. 20(a)(2).  As the United States Court of Appeals for the Seventh Circuit recently explained, a prisoner may not join in one case all defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g) . . . .  A buckshot complaint that would be rejected if filed by a free person - say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner.

*George v. Smith*, 507 F. 3d 605, 607 (7th Cir. 2007).

of these new actions, the Court -- out of abundance of caution -- will not direct assessment of filing fees against Plaintiff with regard to these actions. Rather, the Court will have both of these actions administratively terminated subject to reopening in the event Plaintiff (1) elects to assume the responsibilities associated with these new actions; and (2) manifests his election by timely submitting his filing fee of $350 with regard to both (or either) action(s), or by timely filing his *in forma pauperis* application(s) in both (or either) action(s). Moreover, in order to ensure that Plaintiff has a full and fair opportunity to state all of his claims against Defendants and/or against the parole board, this Court will allow Plaintiff to submit, together with his filing fee or with *in forma pauperis* application, Plaintiff's amended complaint(s) and/or petition in both of these new actions.[8]

### III.  CONCLUSION

For the reasons stated herein, Plaintiff's Motion [Docket No. 53] is denied as to his civil contempt challenges. Plaintiff's remaining claims are dismissed without prejudice. An appropriate form of order is filed herewith.

Dated:  May 26, 2009

                                    /s/ Garrett E. Brown
                                    GARRETT E. BROWN, JR., U.S.D.J.

---

[8] The Court also takes this opportunity to remind Plaintiff that, in the event Plaintiff elects to raise his challenges against the parole board in a habeas petition rather than in a civil complaint, Plaintiff's filing fee would be $5.00 and, if Plaintiff is granted *in forma pauperis* status, no filing fee would be assessed against him.